UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GS HOLISTIC, LLC,<br><br>           Plaintiff,<br><br>    v.<br><br>GOKUL PUDASAINI, et al.,<br><br>           Defendants. | Case No. 23-cv-00753-AMO (LJC)<br><br>**REPORT AND RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT**<br><br>Re: ECF No. 21 |

Plaintiff GS Holistic, LLC (GS Holistic) filed this action for alleged trademark infringement under 15 U.S.C. § 1114 and false designation of origin and unfair competition under 15 U.S.C. § 1125(a) against Defendants Gokul Pudasaini d/b/a Smoke and Vape (Smoke and Vape) and Gokul Pudasaini. ECF No. 14 (First Amended Complaint, or FAC) ¶¶ 53–61, 62–70. Defendants failed to appear, and the Clerk of the Court entered default against each of them. ECF No. 21. GS Holistic subsequently filed a Motion for Default Judgment (ECF No. 21), which was referred to the undersigned for a report and recommendation. ECF No. 26. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for determination without oral argument. Upon consideration of the applicable authority, the papers submitted, and the record in the case, the undersigned **RECOMMENDS** that the Motion for Default Judgment be **DENIED**.

I.     **BACKGROUND**

GS Holistic is a limited liability company incorporated in Delaware, with its principal place of business in Los Angeles, California. FAC ¶ 5. GS Holistic is the federally registered owner of three trademarks related to the "Stüdenglass" brand, which includes glass infusers and accessories. *Id.* ¶¶ 8, 11. The Stüdenglass glass infuser is a high-quality smoking apparatus that retails at $599.95. *Id.* ¶¶ 9, 21. GS Holistic has been using the Stündenglass trademarks in

1    commerce throughout the United States continuously since at least 2020.  *Id.* ¶ 13.  According to

2    GS Holistic, its Stündenglass products have received significant recognition and publicity in the

3    United States from numerous media publications and through collaborations with celebrities and

4    other companies.  *Id.* ¶¶ 17–19.

5          GS Holistic alleges that Defendants sell counterfeit glass infusers without its authorization

6    that bear "reproductions, counterfeits, copies, and/or colorable imitations" of the Stündenglass

7    trademarks.  *Id.* ¶ 25.  On October 11, 2022, an undercover investigator sent by GS Holistic

8    purchased a glass infuser with a Stündenglass mark affixed to it from Smoke and Vape for a cost

9    of $492.21.  *Id.* ¶¶ 29–30.  GS Holistic does not specify which of its three registered trademarks

10   was reproduced on the glass infuser.  It then had an agent inspect either "images and/or the

11   physical unit of the product" to determine the product's authenticity—GS Holistic does not

12   specify which of the two methods of inspection was performed by its agent.  *Id.* ¶ 31. Through this

13   inspection, the agent "confirmed" that the glass infuser was a counterfeit good with an

14   "[i]nfringing [trademark] affixed to it."  *Id.*  GS Holistic alleges that the unauthorized sale by

15   Smoke and Vape of counterfeit goods is done under the "authority, direction, and/or participation"

16   of Mr. Pudasani.  *Id.* ¶ 34.  GS Holistic further alleges that Defendants' acts are "willful with the

17   deliberate intent to trade on the goodwill of the Stündenglass [trademarks], cause confusion and

18   deception in the marketplace, and divert potential sales of [its] glass infusers" to Smoke and Vape.

19   *Id.* ¶ 43.

20   **II.    LEGAL STANDARD**

21         Obtaining a default judgment is a two-step process.  *Eitel v. McCool*, 782 F.2d 1470, 1471

22   (9th Cir. 1986).  First, "[w]hen a party against whom a judgment for affirmative relief is sought

23   has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the

24   clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once a default is entered, the factual

25   allegations of the complaint, other than those pertaining to damages, are deemed admitted.  *See*

26   Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is

27   admitted if a responsive pleading is required and the allegation is not denied"); *Garamendi v.*

28   *Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012).  After entry of default, a plaintiff may then seek a

United States District Court
Northern District of California

default judgment. *See* Fed. R. Civ. P. 55(b)(1) and (2). The decision of whether to grant or deny a request for default judgment lies within the sound discretion of the district court. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 852 (9th Cir. 2007). Before assessing the merits of a default judgment, the Court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)). If the Court finds these elements satisfied, it turns to the following factors (the *Eitel* factors) to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel*, 782 F.2d at 1471–72 (citation omitted). In this analysis, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc.*, 503 F.3d at 854 (internal quotation marks and citation omitted). Therefore, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III. DISCUSSION

#### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *See In re Tuli*, 172 F.3d at 712. While evaluating the existence of jurisdiction, the Court may resolve factual disputes by "look[ing] beyond the complaint" and considering "affidavits or other evidence properly brought before the court." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040, n.2 (9th Cir. 2003) (considering subject matter jurisdiction on a 12(b)(1) motion).

### 1. Subject Matter Jurisdiction

This is a civil action against Defendants for trademark infringement and false designation of origin under the Lanham Act (15 U.S.C. § 1051 et. seq.) FAC ¶¶ 53–70. Therefore, the Court has federal question jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

### 2. Personal Jurisdiction

GS Holistic alleges that the Court has personal jurisdiction over Defendants because Smoke and Vape is incorporated and has its principal place of business in California, and Mr. Pudasaini resides in California. FAC ¶ 3. It also alleges that Defendants regularly conduct and solicit business in California, including in the Northern District of California. *Id.*

As an initial matter, for individuals like Mr. Pudasaini, the "paradigm forum for the exercise of general [personal] jurisdiction" is his "domicile." *Goodyear Dunlop Tires Operations, S.A. (Goodyear) v. Brown*, 564 U.S. 915, 924 (2011). Although GS Holistic alleges that Mr. Pudasaini resides in California, this does not mean he is domiciled here. *See Kanter v. WarnerLambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return," however, "[a] person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state") (internal citation omitted). However, another traditional basis for conferring a court with personal jurisdiction is also personal service of the defendant within the forum state. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Here, GS Holistic filed a Certificate of Service indicating that Mr. Pudasaini was personally served with summons and a copy of the First Amended Complaint in San Jose, California. ECF No. 18. Thus, the Court can exercise personal jurisdiction over Mr. Pudasaini.

Because GS Holistic alleges that Smoke and Vape is a California corporation, this Court has personal jurisdiction over it as well. *See Goodyear*, 564 U.S. at 924 (identifying "place of incorporation" and "principal place of business" as "'paradig[m]' bases for the exercise of general [personal] jurisdiction" over corporations) (internal citation omitted). The Court does note for the record that a search of the California Secretary of State's Business Search website produced no

results for Smoke and Vape and/or Gokul Pudasaini d/b/a Smoke and Vape.[1]  But "the absence of a record with the Secretary of State…does not necessarily establish" that Smoke and Vape is a "non-existent entity."  *Sanchez v. Inland-Temple Corp.*, No. CV 09-6987 ODW (SHX), 2009 WL 10675627, at *2 (C.D. Cal. Dec. 17, 2009) (noting that the defendant corporation could be "an unregistered entity" or "registered under a different name," and therefore the lack of a record with the Secretary of State did not mean that the non-existence of the corporation had been "conclusively established.")  Moreover, at the default judgment stage, GS Holistic's factual allegations are deemed admitted by Defendants.  *See Garamendi*, 683 F.3d at 1080.  Accordingly, GS Holistic has sufficiently alleged a basis for the Court's exercise of personal jurisdiction over Smoke and Vape.

### 3. Service of Process

Rule 4(e) of the Federal Rules of Civil Procedures allows for service of an individual by "delivering a copy of the summons and of the complaint to the individual personally."  Fed. R. Civ. P. 4(e)(2)(A).  As noted above, on July 10, 2023, GS Holistic personally served Mr. Pudasaini with summons and a copy of the First Amended Complaint.  ECF No. 18.  The process server confirmed Mr. Pudasaini's identity by having Mr. Pudasaini state his name.  *Id.* at 1.  Accordingly, Mr. Pudasaini was properly served.

Rule 4(h)(1) authorizes service upon a domestic corporation such as Smoke and Vape "in the manner prescribed by Rule 4(e)(1) for serving an individual," which, in turn, allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  Pursuant to Rule 4(h)(1), service of a corporation can be effectuated by following state law for serving a summons in the state where the district court is located.  Under California law, a

---

[1] The Court can *sua sponte* take judicial notice of business records maintained on the California Secretary of State's Business Search website pursuant to Federal Rule of Evidence 201.  *See Gerritsen v. Warner Bros. Entm't Inc.,* 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (taking judicial notice of a business profile on California Secretary of State's website on the basis that under Rule 201, a court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies") (internal quotation marks and citation omitted).  The California Secretary of State's Business Search website can be accessed at https://bizfileonline.sos.ca.gov/search/business.

corporation may be served by delivering a copy of the summons and complaint (1) to the person designated as an agent for service of process under certain provisions of the California Corporations Code, or (2) to the "president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant general, or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(a), (b).

Here, the Certificate of Service indicates that Mr. Pudaisini was served on behalf of Smoke and Vape as its registered agent pursuant to Section 416.10 of the California Code of Civil Procedure. ECF No. 17 at 1–2. Although the process server confirmed Mr. Pudaisini's identity by having him state his name (*id.* at 1), there is nothing to indicate that Mr. Pudaisini confirmed he is Smoke and Vape's registered agent for service of process. The lack of a record for Smoke and Vape with the California Secretary of State also means there is no public record that identifies its registered agent for service of process. However, "[a] sworn proof of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *Johnson v. Duke of Edinburgh, Inc.*, No. 21-CV-03286-SVK, 2022 WL 6219495, at *2 (N.D. Cal. June 24, 2022), *report and recommendation adopted*, No. 5:21-CV-03286-EJD, 2022 WL 6167350 (N.D. Cal. Oct. 7, 2022) (internal quotation marks and citation omitted). And in the First Amended Complaint, GS Holistic alleges that Mr. Pudasaini "owned, managed, and/or operated" Smoke and Vape, that he "regularly exercised the authority" to decide which products it offered for sale, and that he "controlled the finances and operations" for the company. FAC ¶ 7. At the default judgment stage, GS Holistic's factual allegations must be accepted as true. *See Garamendi*, 683 F.3d at 1080. Given all the above, GS Holistic has sufficiently established that Smoke and Vape was properly served via personal service to Mr. Pudasaini.

B. *Eitel* Factors

Overall, the undersigned finds GS Holistic's analysis of the *Eitel* factors in its Motion for Default Judgment to be conclusory and lacking in detail. *See* ECF No. 21. Particularly as to *Eitel* factors two and three, which concern the merits of GS Holistic's substantive claims and the sufficiency of the First Amended Complaint, respectively, GS Holistic's allegations are not sufficient to support the entry of default judgment.

### 1. The Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors are analyzed together, "and the Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal citation omitted); *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). In this analysis, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin*, 285 F.3d at 906.

Here, GS Holistic's First Amended Complaint includes two separate claims: 1) Trademark infringement under 15 U.S.C. § 1114 (FAC ¶¶ 53-61); and 2) False designation of origin and unfair competition under 15 U.S.C. § 1125(a) (FAC ¶¶ 62-70).

#### a. Trademark Infringement

To prevail on a trademark infringement claim, "the trademark holder must show that it is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007); *see* 15 U.S.C. § 1114(1) (imposing civil liability for infringing use of a trademark that "is likely to cause confusion, or to cause mistake, or to deceive.") "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (internal quotation marks and citation omitted). To determine whether a "likelihood of confusion" exists between related goods, the Ninth Circuit has established an eight-part test: 1) strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810, n.19 (9th Cir. 2003).

Here, GS Holistic alleges that it owns three federally registered trademarks, thus satisfying

the first element of a trademark infringement claim. *See* FAC ¶ 11. However, its allegations regarding whether Defendants willfully infringed on its trademarks are insufficient. First and foremost, GS Holistic relies only on one instance in October 2022 where its undercover investigator purchased one single glass infuser from Smoke and Vape with a "Stündenglass Mark" affixed to it for $492.21, which is less than the $599.95 retail price of GS Holistic's product. *Id.* ¶¶ 21, 29–30. But GS Holistic does not specify which of its three trademarks was affixed to the counterfeit product. Nor does it specify whether its agent physically examined the product—versus looking only at images—to confirm the similarities of the trademarks. *Id.* ¶ 31. And although GS Holistic alleges that "[t]he Defendants' use of the counterfeit Stündenglass [t]rademarks began long after the registration of the Stündenglass [t]rademarks," (*id.* ¶ 33), it does not allege when Defendants began selling counterfeit products or provide any other details about Defendants' allegedly infringing actions.

Moreover, GS Holistic's allegations regarding Mr. Pudasaini's ownership and control of Smoke and Vape are equally conclusory and lacking in detail. *See, e.g., id.* ¶ 32 ("[Mr. Pudasaini] authorized, directed, and/or participated in [Smoke and Vape's] offer for sale, in commerce, of the [c]ounterfeit [g]oods. [Mr. Pudasaini's] acts were a moving, active, and/or conscious force behind [Smoke and Vape's] infringement of the Stündenglass [t]rademarks.") "As recognized by the Ninth Circuit, '[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, ... or the 'central figure' in the challenged corporate activity.'" *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (quoting *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 (9th Cir. 1989)). GS Holistic's First Amended Complaint is "unsupported by facts explaining how [Mr. Pudasaini] participated in the allegedly wrongful conduct at issue in this case." *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,* No. CV 15-769 PSG (SSX), 2015 WL 12731929, at *9 (C.D. Cal. May 8, 2015) (granting motion to dismiss trade dress infringement, patent infringement, and unfair competition law claims against individual defendant where the complaint's "conclusory pleading [was] insufficient to state a claim for relief.")

Notably, this Court and other district courts in this Circuit have found similar (if not almost

1  identical) allegations by GS Holistic equally insufficient. *See, e.g., GS Holistic, LLC v. Ashes
2  Plus Nine et al.*, No. 22-CV-07101-LJC, 2023 WL 5993055, at *1 (N.D. Cal. Aug. 25, 2023),
3  *report and recommendation adopted*, No. 4:22-CV-07101-YGR, 2023 WL 6932565 (N.D. Cal.
4  Sept. 21, 2023); *GS Holistic LLC, v. Puff N Go Gift Shop LLC, et al.*, No. 22-CV-07634-VKD,
5  2023 WL 4146232, at *4 (N.D. Cal. June 22, 2023), *report and recommendation adopted*, No. 22-
6  CV-07634-EJD (N.D. Cal. Aug. 23, 2023); *GS Holistic, LLC v. Alien Smoke Shop*, No.
7  222CV05622JLSDFM, 2023 WL 3402589, at *2 (C.D. Cal. Mar. 17, 2023).

### b.     False Designation of Origin

"To establish a claim for false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must show: '(1) the defendants used a false designation of origin; (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or services by another person; and (4) that plaintiff has been or is likely to be damaged.'" *Puff N Go Gift Shop LLC*, 2023 WL 4146232, at *5 (quoting *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1039 (C.D. Cal. 2011)). "The elements of a claim for false designation of origin under § 1125 are virtually the same as the elements of a claim for trademark infringement under § 1114, although a § 1114 claim requires ownership of a registered trademark while a § 1125 claim does not." *Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2020 WL 1531349, at *7 (N.D. Cal. Mar. 31, 2020). In its Motion for Default Judgment, GS Holistic relies on the same case law and the same factual allegations from the First Amended Complaint for both its trademark infringement and false designation of origin claim. ECF No. 21 at 10 (citing *AK Futures LLC v. Smoke Tokes, LLC*, No. 821CV01061JVSADSX, 2021 WL 5359019, at *3 (C.D. Cal. Nov. 17, 2021) (analyzing false designation of origin claim using same elements as trademark infringement claim)). But ultimately, GS Holistic's "claim for false designation of origin is insufficient for the same reasons stated above with respect to [GS Holistic's] trademark infringement claim."[2] *Puff N Go Gift Shop*

---

[2] Because the undersigned finds that GS Holistic has failed to satisfy the second and third *Eitel* factors, which require it to state a claim(s) upon which relief may be granted, she will forego analysis of the rest of the *Eitel* factors. *See Golden W. Veg, Inc. v. Bartley*, No. 16-CV-03718-LHK, 2017 WL 386254, at *6 (N.D. Cal. Jan. 27, 2017) (explaining that failure to satisfy the

*LLC*, 2023 WL 4146232, at *5.

### C.      Relief Sought

GS Holistic seeks statutory damages, costs, a permanent injunction, and other equitable relief.  Even if GS Holistic's allegations were sufficient to support entry of default judgment, the relief it seeks is inadequately supported by the evidence.

#### 1.      Damages

The Court may award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the [C]ourt considers just."  15 U.S.C. § 1117(c)(1).  "[I]f the [C]ourt finds that the use of the counterfeit mark was willful, [the Court may award] not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the [C]ourt considers just."  *Id.* § 1117(c)(2).  Here, GS Holistic seeks $50,000 per infringing trademark, for a total of $150,000 in statutory damages.  ECF No. 21 at 2.  According to GS Holistic, this is "only a fraction of the actual losses" to its business.  *Id.* at 15.  An affidavit from GS Holistic's owner and CEO, Christopher Folkerts, as to the "value" of damages in this case, provides that through GS Holistic's own "research," it "determined that at least 3 out of every 10 products sold is a counterfeit."  ECF No. 21-5, ¶ 16.  Although its 2021 sales were approximately $9,600,000, if the market had not been impacted by counterfeit goods, Mr. Folkerts estimates that GS Holistic's 2021 sales would have been approximately $38,400,000.00.  *Id.* ¶¶ 15-16.

Even if $150,000 is a "fraction of the actual losses" to its business, GS Holistic has not provided enough evidence supporting its request for that amount.  Both of Folkerts' affidavits as to damages (ECF Nos. 21-5, 21-6) are equally as insufficient as the allegations in the First Amended Complaint.  Mr. Folkerts focuses extensively on the general sale of counterfeit products, which presumably includes other retailers in the marketplace, and which is not relevant to damages caused by Defendants' allegedly infringing actions.  *See* ECF No. 21-5, ¶¶ 3, 12–16; ECF No. 21-6 ¶¶ 3, 22; *GS Holistic, LLC v. MSA-Bossy Inc.*, No. 22-CV-07638-JSC, 2023 WL

second and third *Eitel* factors is sufficient to deny a motion for default judgment).

3604322, at *5 (N.D. Cal. May 22, 2023) ("[C]ourts may consider deterrence, but must base a damages award on the particular defendant's violation. Here, Defendants should not be responsible for other trademark violations by other retailers across the market.")

Nor does Mr. Folkerts provide any detail on the "research" done by GS Holistic in support of its "market share" theory. Ultimately, both of Mr. Folkerts' affidavits are full of conclusory statements lacking factual support. *See, e.g.*, ECF No. 21-6, ¶ 21 ("The counterfeiting and infringing actions of the Defendants have caused the Plaintiff to suffer losses, as he has lost consumer good-will, loss of brand reputation, confusion in the marketplace, and lost profits based on the systematic sale of fake Stündenglass products.") In addition, "[GS Holistic's] request for $150,000 in statutory damages (at $50,000 for each of the three Stündenglass [trademarks]) is disproportionate to the [First Amended C]omplaint's allegations of only one sale of a single product, bearing one counterfeit [trademark], at a price of [$400]." *Puff N Go Gift Shop LLC*, 2023 WL 4146232, at *5. Therefore, GS Holistic has failed to meet its burden of proving statutory damages in this case.

### 2. Costs

A plaintiff who establishes a trademark violation "shall be entitled, ... subject to the principles of equity, to recover ... the costs of the action." 15 U.S.C. § 1117(a). GS Holistic is requesting $1089.21 in costs, which consists of the filing fee ($402.00), the process server fee ($130.00), and investigation fees ($557.21). ECF No. 21 at 16. However, "[w]hile filing and service of process expenses are reasonable and routinely awarded," this Court has previously concluded that "pre-suit investigation costs are not appropriate 'costs of the action' under § 1117(a)." *Puff N Go Gift Shop LLC*, 2023 WL 4146232, at *6; *see also MSA-Bossy Inc.*, 2023 WL 3604322, at *6 ("Plaintiff does not cite any authority for shifting the cost of pre-suit investigation to Defendants. The plain language 'the costs of the action,' 15 U.S.C. § 1117(a), is limited to costs incurred after 'the action'—the court case—has begun.") Therefore, GS Holistic would be entitled at most to $532 in costs.

### 3. Injunctive Relief

Courts "have power to grant injunctions, according to the principles of equity and upon

1   such terms as the [C]ourt may deem reasonable, to prevent the violation of any right of the
2   registrant of a mark[.]" 15 U.S.C. § 1116(a).  "According to well-established principles of equity,
3   a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant
4   such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that
5   remedies available at law, such as monetary damages, are inadequate to compensate for that
6   injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy
7   in equity is warranted; and (4) that the public interest would not be disserved by a permanent
8   injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

GS Holistic offers no argument in its Motion for Default Judgment to support its request for injunctive relief.  ECF No. 21 at 17.  Mr. Folkerts' affidavit is conclusory on this point and simply repeats language found in the First Amended Complaint.  ECF No. 21-6, ¶ 14; FAC at 18.  In addition, "the scope of [GS Holistic's] proposed injunction is overbroad in that it seeks to enjoin [D]efendants from '[a]ssisting, aiding or attempting to assist or aid any other person or entity' in performing prohibited activities—relief that is not sought in [GS Holistic's] [First Amended C]omplaint." *Puff N Go Gift Shop LLC*, 2023 WL 4146232, at *7; *see* ECF No. 21 at 17; FAC at 18.  More importantly, as stated above, GS Holistic only alleges the sale of one counterfeit product with one Stündenglass trademark but requests injunctive relief as to all Stündenglass trademarks.  Ultimately, GS Holistic has not demonstrated that it is entitled to the injunctive relief it seeks.

#### 4. Other Equitable Relief

GS Holistic also requests "an order requiring the Defendants, at their cost, deliver to the Plaintiff for destruction all products…in their possession, custody or control bearing any of the Stündenglass Marks." ECF No. 21 at 17 (citing 15 U.S.C. § 1118).  But it offers no argument, nor does it provide any evidence, in support of this request.  And as with the request for a permanent injunction, GS Holistic seeks an order encompassing all three Stündenglass trademarks when the allegations in the First Amended Complaint only discuss one allegedly counterfeit product with one infringing trademark.

Finally, in the First Amended Complaint, GS Holistic requests an order from the Court

"requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants disgorge and return or pay their ill-gotten gains" and "that an asset freeze or constructive trust be imposed on all monies and profits in the" possession of Mr. Pudasaini, "which rightfully belong to the Plaintiff." FAC at 18–19. GS Holistic does not request this relief in its Motion for Default Judgment and offers no argument or evidence for the Court to consider. Therefore, GS Holistic has not demonstrated that it is entitled to this type of equitable relief.

## IV. CONCLUSION

For the reasons discussed above, it is **RECOMMENDED** that GS Holistic's Motion for Default Judgment be **DENIED**. GS Holistic shall serve a copy of this report and recommendation on Defendants within three business days from the filing date of this report and recommendation and shall file a proof of service with the Court. Any party may serve and file specific written objections to this recommendation within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

**IT IS SO ORDERED AND RECOMMENDED.**

Dated: February 21, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge

13